# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | |
|---|---|
| DEBORAH GARRETT, CHARLES GARRETT, and KENNETH GARRETT, on behalf of plaintiffs and the class defined herein, )<br><br>    Plaintiffs, )<br><br>v. )<br><br>WESTSIDE GASTROINTESTINAL SPECIALISTS, PLLC, J. TYLER ROPER, ACCOUNTS RESEARCH, INC., and unidentified persons and/or entities that are current or former clients of ACCOUNTS RESEARCH, INC., )<br><br>    Defendants. ) | Civil Action No. _____<br><br><u>Jury Trial Demanded</u> |

---

## CLASS ACTION COMPLAINT

---

## INTRODUCTION

1.  This class action seeks to vindicate the rights of hundreds, if not thousands, of Tennessee residents who have been victimized for years by a massive scheme to fraudulently obtain and enforce judgments for amounts worth thousands, if not hundreds of thousands, of dollars, they do not owe because they are not signatories to a contract, and even if they are signatories, the contracts do not provide or state law does not allow for the amounts for interest, collection fees, attorney fees, and process server fees demanded and collected, and is brought to recover damages for illegal activities prohibited by the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. (FDCPA), the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. (RICO), and state law.

2.      This class action arises out of:

A.      The Defendants Account Research, Inc. (Accounts Research) and J. Tyler Roper's (Roper) (collectively "FDCPA Defendants") violations of the FDCPA in filing collection lawsuits and Accounts Research's violations of the FDCPA in filing requests for the issuance of garnishments;

B.      The Defendant Westside Gastrointestinal Specialists, PLLC's (Westside) and unidentified entities and persons that are current or former clients of Accounts Research (collectively "Creditors"), and Accounts Research's violations of state law when they requested garnishments be issued to employers for amounts that included postjudgment interest or fees that exceed amounts allowed under Tennessee state law (collectively "Garnishment Defendants"); and

C.      The Creditors and Accounts Research and Roper, as agents of the Creditors, violations of RICO for intentionally attempting to collect unlawful debts incurred in connection with the business of extending credit for medical services without requiring the person provided the medical services to pay for the services in full when provided by filing collection lawsuits that include a prejudgment usurious rate of more than twice the enforceable interest rate they are entitled to charge under applicable Tennessee law and by filing requests for garnishments to be issued to employers that include a postjudgment usurious rate of more than twice the enforceable interest rate they are entitled to charge under applicable Tennessee law (collectively "RICO Defendants");

all in their efforts to collect consumer debts from Plaintiffs Deborah Garrett, Charles Garret, and Kenneth Garrett (collectively "the Garretts"), and others similarly situated.

## JURISDICTION AND VENUE

3.    Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d) and 18 U.S.C. § 1964(a) and (c).

4.    Venue is proper, pursuant to 28 U.S.C. § 1391(b), in this District as a substantial part of the acts and omissions giving rise to the Plaintiffs' claims occurred here and is proper pursuant to 18 U.S.C. § 1965(a) because the Defendants and Plaintiffs reside here, and the Defendants transact business here.

## PARTIES

5.    Deborah Garrett is a natural person who resides in Knox County, Tennessee.

6.    Charles Garrett is a natural person who resides in Knox County, Tennessee.

7.    Kenneth Garrett is a natural person who resides in Knox County, Tennessee.

8.    The named Plaintiffs and the others similarly situated fall within the following proposed class definitions:

   A.    **FDCPA CLASS**:  All persons in the State of Tennessee whom Accounts Research and Roper filed actions against in state court on behalf of the Creditors, and whom Accounts Research requested the issuance of garnishments to their employers on behalf of the Creditors, all in connection with and in an attempt to collect a "debt" as defined by 15 U.S.C. § 1692a(5) in the last year (FDCPA Plaintiffs).

   B.    **WRONGFUL GARNISHMENT CLASS**:  All persons in the State of Tennessee who were subject to requests made by the Garnishment Defendants for garnishments to be issued to the persons' employers in the last 3 years (Garnishment Plaintiffs).

   C.    **RICO CLASS**:  All persons in the State of Tennessee who the RICO Defendants attempted to collect unlawful debts from in the last 4 years (RICO Plaintiffs).

9.     Westside is a Tennessee professional limited liability company that, on information and belief, is duly licensed to conduct business within the State of Tennessee, and with a principal office located at 9349 Park West Blvd., Ste. 101, Knoxville, TN 37923-4326, and maintains Jeffrey R. Crist, 9349 Park West Blvd., Ste. 101, Knoxville, TN 37923-4326, as its registered agent.

10.    The Creditors, besides Westside, are unidentified entities and persons that are current or former clients of Accounts Research.

11.    Accounts Research is a for-profit Tennessee corporation registered to do business in Tennessee with a principal office located at 201 Center Park Dr, Ste 1070, Knoxville, TN 37922-2105 that Guy Greer, 201 Center Park Dr, Ste 1070, Knoxville, TN 37922-2105 as its registered agent.

12.    Roper is a natural person who is a licensed attorney in the State of Tennessee.

## CLASS ALLEGATIONS

13.    Deborah Garrett, Charles Garret, and Kenneth Garrett bring this action individually and on behalf of all persons similarly situated, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

14.    Deborah Garrett, Charles Garret, and Kenneth Garrett, individually and on behalf of the **FDCPA CLASS** defined above (FDCPA Plaintiffs), sue the FDCPA Defendants for FDCPA violations, including, but not limited to FDCPA prohibitions against the following negligent or intentional actions or omissions:

(a)    falsely representing: (1) the character, amount, or legal status of debts, and (2) the compensation which may be lawfully received by a debt collector for collection of debts;

(b)     making false, deceptive, or misleading communications, including amounts, in collection lawsuits, that would be confusing to the least sophisticated consumer as to how much is allegedly owed;

(c)     providing credit information in collection lawsuits, and requests for the issuance of garnishments, which is known, or which should be known to be false;

(d)     using unfair or unconscionable means to collect or attempt to collect an amount not authorized by the agreement creating the debt or permitted by law;

(e)     attempting to collect amounts not owed by the persons; and

(f)     falsely representing or implying that communications are from an attorney.

15.     Deborah Garrett, individually and on behalf of the **GARNISHMENT CLASS** defined above (Garnishment Plaintiffs), sue the Garnishment Defendants for requesting that garnishments be issued to the Garnishment Plaintiffs' employers for amounts that include postjudgment interest or fees that exceed amounts allowed under state law.

16.     Deborah Garrett, Charles Garret, and Kenneth Garrett, individually and on behalf of the **RICO CLASS** defined above (RICO Plaintiffs), sue the RICO Defendants for intentionally attempting to collect unlawful debts in the form of: (a) prejudgment interest that exceeds the amounts allowed under state law and that was not legally owed by the persons, and (b) postjudgment interest that exceeds the amounts allowed under state law, in violation of RICO.

## GARRETTS' FACTUAL ALLEGATIONS

17.     Deborah Garrett, Charles Garrett, and Kenneth Garrett are each a "consumer" as defined by 15 U.S.C. § 1692a(3) and a "person" as defined by 18 U.S.C. § 1961(3).

18.     Westside is a "person" as defined by 18 U.S.C. § 1961(3) and part of an "enterprise" as defined by 18 U.S.C. § 1961(4), referred to as the "Westside Enterprise".

19.   The Creditors besides Westside, are each a "person" as defined by 18 U.S.C. § 1961(3) and each a part of an "enterprise" as defined by 18 U.S.C. § 1961(4), but who cannot presently be served until their identities are determined.

20.   Accounts Research is an agent of Westside and the other Creditors and regularly engages in the collection of consumer debts owed or due or asserted to be owed or due another and attempts to collect them by using the mails and telephone system, drafting civil summons and sworn affidavits for state court lawsuits for clients, preparing requests for the issuance of garnishments to employers and levies to financial institutions, paying the filing fees and process service fees to file collection lawsuits and requests for the issuance of garnishments and levies, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6), a "person" as defined by 18 U.S.C. § 1961(3), and is part of "enterprises" as defined by 18 U.S.C. § 1961(4), including the Westside Enterprise and the other enterprises that will be identified when the Creditors besides Westside are identified.

21.   Roper is an agent of Westside and the Creditors and regularly engages in the collection of consumer debts owed or due or asserted to be owed or due another and attempts to collect them by prosecuting collection lawsuits to collect consumer debts owed to Accounts Research's clients, using collection communications in the form of the collection lawsuits and oral statements to consumers against whom the collection lawsuits were filed, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6), a "person" as defined under 18 U.S.C. § 1961(3) and is part of "enterprises" as defined by 18 U.S.C. § 1961(4), including the Westside Enterprise and the other enterprises that will be identified when the Creditors besides Westside are identified.

22. The FDCPA Defendants have alleged that the Garretts incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and the obligation is therefore a "debt" as defined by 15 U.S.C. § 1692a(5), namely, a debt alleged to be owed to Westside for medical services provided to Kenneth Garrett.

23. Westside, Accounts Research and Roper (collectively "the Defendants") have attempted to collect the alleged debt from the Garretts by filing a collection lawsuit which includes: (a) prejudgment interest based on a usurious rate of more than twice the enforceable interest rate they are entitled to charge under applicable Tennessee law for an extension of credit for medical services, and (b) prejudgment interest based on a usurious rate of more than twice the enforceable interest rate they are entitled to charge under applicable Tennessee law when the persons sued did not sign a contract, and the alleged obligation is therefore an "unlawful debt" as defined by 18 U.S.C. § 1691(6).

24. Westside and Accounts Research have attempted to collect the alleged debt from the Garretts by filing a request for the issuance of a garnishment to Deborah Garrett's employer which includes postjudgment interest or fees based on a usurious rate of more than twice the enforceable interest rate they are entitled to charge under applicable Tennessee law, and the alleged obligation is therefore an "unlawful debt" as defined by 18 U.S.C. § 1691(6).

25. After default, Westside hired Accounts Research as its agent for collection of the debts from the Garretts and Accounts Research hired Roper to assist it in attempting to collect the alleged debts from the Garretts.

*Collection Communications*

26.     A "communication" under the FDCPA means conveying the information regarding a debt directly or indirectly to any person through any medium.  **15 U.S.C. § 1692a(2).**

*Collection Lawsuit*

27.     On June 30, 2017, Westside and Accounts Research filed a civil summons and sworn affidavit against the Garretts (collection lawsuit).  **Copy filed as exhibit 1 to this Complaint.**

28.     On information and belief, an employee of Accounts Research prepared the civil summons, and listed J. Tyler Roper on the civil summons as the attorney representing Westside.  **See exhibit 1, p. 1.**

29.     On information and belief, an employee of Accounts Research prepared the sworn affidavit, and Kathy R. Nixon, an employee of Westside, signed the sworn affidavit.  **See exhibit 1, p. 2.**

30.     The civil summons states that the amount owed by the Garrets is "[f]or [b]y [sic] <u>sworn account</u> hereto the court shown for medical care of defendant in the amount of $2,321.68 including attorney fees and service of process."  **See exhibit 1, p. 1.** (underline added)

31.     The civil summons failed to demand an interest rate for post-judgment interest.  **See exhibit 1, p. 1.**

32.     Despite the Defendants failing to demand an interest rate for post-judgment interest, a default judgment based on the legal theory of a sworn account versus a breach of contract was entered against each of the Garretts for $2,321.68 plus interest at the rate of 18% and cost [sic] of suit.  **See exhibit 1, p. 1.**

33. The sworn affidavit allegedly signed by Ms. Nixon, under oath, on June 27, 2017, states:

   1. I have under control, the books and records of [Westside], of which firm I am the MANAGER.

   2. Those books and records show the amount due and owing from the [Garretts] is $ 1,332.73 Principal, $ 248.95 interest (from March 16 through July 17 at 24% A.P.R.), Attorney fees of $ 575.00, $ 165.00 for service of process; Total $ 2,321.68. Plus, pre-judgment and post-judgment interest plus court cost.

   3. This amount is correct and reflects the current amounts shown by the books, records, and invoices of [Westside], after allowance of all credit of which [Westside] is entitled, as the Affiant believes, being familiar with the books and records of [Westside].

   **See exhibit 1, p. 2, ¶¶ 1-3.** (underline in original)

34. Accounts Research paid the filing fees to file the collection lawsuit and the process server fees necessary to attempt proper service of the collection lawsuit on the Garretts.

35. On information and belief, the amounts of attorney fees ($575.00) and process server fees ($165.00), were never incurred or paid by Accounts Research or Westside for the purpose of filing or serving the collection lawsuit on the Garretts or any other reason in connection with collection of the alleged debt. **See exhibit 1, p. 2, ¶ 2.**

36. On information and belief, the alleged principal balance stated in the sworn affidavit in the amount of $1,332.73 includes collection fees of 35% or more that were not a necessary expense paid by Westside to collect payment on the account. **See exhibit 1, p. 2, ¶ 2**

37. By stating, under oath, in the sworn affidavit the principal balance is $1,332.73, the Defendants engaged in willful and wrongful conduct when they intentionally misrepresented the principal amount of debt owed by the Garretts. **See exhibit 1, p. 2, ¶ 2.**

38.   By stating, under oath, in the sworn affidavit that the interest owed on the account from March 2016 to July 2017 is $248.95, and is calculated at 24% A.P.R., the Defendants engaged in willful and wrongful conduct when they charged interest that exceeds Tennessee's law on interest allowed on contracts for medical services and intentionally misrepresented the amount of interest owed because, on information and belief, none of the Garretts ever signed a contract with Westside.  **See exhibit 1, p. 2, ¶ 2.**

39.   By stating, under oath, in the sworn affidavit that attorney fees in the amount of $575.00 were incurred or paid by Westside or Accounts Research, the Defendants engaged in willful and wrongful conduct when they intentionally misrepresented that these amounts had been incurred or paid in connection with filing the Garretts collection lawsuit or any other reason in connection with collection of the debt, and because, on information and belief, none of the Garretts ever signed a contract with Westside.  **See exhibit 1, p. 2, ¶ 2.**

40.   By stating, under oath, in the sworn affidavit that process server fees in the amount of $165.00 were incurred or paid by Westside or Accounts Research, the Defendants engaged in willful and wrongful conduct when they intentionally misrepresented that these amounts had been incurred or paid in connection with serving the Garretts collection lawsuit or any other reason in connection with collection of the debt.  **See exhibit 1, p. 2, ¶ 2.**

41.   By stating, under oath, in the sworn affidavit the amounts demanded for the principal balance, interest, attorney fees, and process server fees are "correct and reflect the current amounts shown by the books, records and invoices of [Westside]", Ms. Nixon, whom, on information and belief, is an employee of Westside, engaged in willful and wrongful conduct on behalf of Westside when she intentionally misrepresented that all the amounts

were correct and that they had been provided to the Garretts in invoices sent by Westside. **See exhibit 1, p. 2, ¶ 3.**

42. By attempting to collects amounts from the Garretts for collection costs, interest at 24% A.P.R., and attorney fees when the amount of interest they were attempting to collect exceeds the amount allowed under state law, and, on information and belief, none of the Garrets signed a contract with Westside, the Defendants engaged in willful and wrongful conduct when they intentionally misrepresented that the Garretts were legally responsible for the alleged collection costs, interest, and attorney fees. **See exhibit 1, p. 2, ¶¶ 2-3; Tenn. Code Ann. § 47-14-103; Tenn. Code Ann. § 47-14-123.**

43. Additionally, Kenneth Garrett was over the age of 18 when the debt was incurred with Westside, so by attempting to collect any amounts from Deborah Garrett or Charles Garrett at all, the Defendants engaged in willful and wrongful conduct when they intentionally misrepresented the Garretts were legally responsible for the debt and such fees interest, attorney fees, collection costs, and court costs. **See exhibit 1, p. 2, ¶¶ 2-3.**

### *Deborah Garrett Garnishment*

44. On July 26, 2017, a default judgment was entered by the state court in the amount of $2,321.68 against the Garretts, plus interest at the rate of 18.00%. **See exhibit 1, p. 1.**

45. As stated above, the sworn affidavit is the only evidence presented to the state court for proof of the debt owed by the Garretts. **See exhibit 1, p. 2.**

46. With the exception for judgments "based on a statute, note, contract or other writing", when the judgment was entered against the Garretts on July 26, 2017, the postjudgment interest rate in Tennessee was 6.25%. **See Tenn. Code Ann. §§ 47-14-121.**

47.    As no evidence was provided to the state court that the debt alleged to be owed is "based on a statute, note, contract or other writing", and, on information and belief, none of the Garretts signed a contract with Westside, the correct calculation of interest on the judgment amount from the date of the judgment [July 26, 2017] to the issuance of the garnishment [August 9, 2017], at the postjudgment interest rate of 6.25%, is only $5.57.

48.    Even if Westside and Accounts Research are allowed to add interest to the judgment at a 18.00% rate, which was not demanded in the civil summons, but awarded, the calculation of interest on the judgment amount from the date of the judgment [July 26, 2017] to the issuance of the garnishment [August 9, 2017], at rate of 18.00%, is only $16.02.

49.    On or before August 9, 2017, Westside and Accounts Research filed a request with the state court for issuance of a garnishment to Deborah Garrett's employer which stated that the amount of the judgment entered in the Garretts collection lawsuit is $2,321.68 but listed the amount of interest due on the garnishment request as $52.00, based on a usurious rate of over nine (9) times the allowable postjudgment interest rate of 6.25%, and over three (3) times the interest rate awarded in the judgment of 18.00%, which was not demanded. **Copy of garnishment filed as exhibit 2 to this Complaint.**

50.    Due to the addition of postjudgment interest or fees that exceeds the amount allowed under state law to the request for issuance of garnishment, Westside and Accounts Research have attempted to collect an amount from Deborah Garrett that is illegal under Tennessee and federal law and that she does not owe.  **See exhibit 2.**

### *GARRETTS' FDCPA CLAIMS*

51.    Plaintiffs incorporate by reference all the above paragraphs as though fully stated herein.

52. The civil summons, sworn affidavit and garnishment request filed in the collection lawsuit were communications from the FDCPA Defendants in connection with collection of the debt and in an attempt to collect the debt. **See exhibit 1.**

53. The collection lawsuit sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically the balance allegedly owed to Westside for medical services provided to Kenneth Garrett.

54. The amounts the FDCPA Defendants included in the collection lawsuit for the principal balance, collection costs, interest, attorney fees and process server fees that Garretts allegedly owed were amounts not agreed to by any of the Garretts in a contract or were not incurred by any of the Defendants in connection with filing or serving the collection lawsuit or filing the request for issuance of the garnishment. **See exhibit 1.**

*Garretts' Collection Lawsuit*

55. By including amounts in the collection lawsuit allegedly owed by the Garretts for:

   (a) collection fees that were not billed to any of the Garretts by Westside and that none of the Garretts had agreed to pay in a written contract with Westside;

   (b) interest that was not billed by Westside, that none of the Garretts had agreed to pay in a written contract with Westside, and that exceeds the amount of interest that may be charged under state law;

   (c) attorney fees that none of the Garretts had agreed to pay in a written contract with Westside and that had not been incurred by Westside or Accounts Research; or

   (d) process server fees that had not been incurred by Westside or Accounts Research;

   the FDCPA Defendants made false representations of: (1) the character, amount, or legal status of the debts, and (2) the compensation which may be lawfully received by the

FDCPA Defendants for collection of the debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), threatened to take actions that could not legally take, in violation of 15 U.S.C. 1692e(5), and communicated credit information which is known or which should be known to be false, in violation of 15 U.S.C. § 1692e(8), all of which are the use of false representations or deceptive means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692e(10), and the use of an unfair or unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f, specifically, 1692f(1), for collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

### *Deborah Garrett Garnishment*

56. Due to the addition of postjudgment interest or fees that exceed the amount allowed under state law to the request for issuance of the garnishment to Deborah Garrett's employer, Accounts Research has attempted to collect a debt from Deborah Garret that she does not owe, and has made false representations of: (a) the character, amount, or legal status of the debts, and (b) the compensation which may be lawfully received by Accounts Research for collection of the alleged debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), threatened to take actions that could not legally take, in violation of 15 U.S.C. 1692e(5), and communicated credit information which is known or which should be known to be false, in violation of 15 U.S.C. § 1692e(8), all of which are the use of false representations or deceptive means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692e(10), and the use of an unfair or unconscionable means to collect or attempt to collect the debt in violation of 15 U.S.C. § 1692f, specifically, 1692f(1), for

collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

### *False Representation or Implication That a Communication is From an Attorney*

57.    On information and belief, Accounts Research regularly hires Roper to allow it to list Roper as the attorney of record on collection lawsuits filed on behalf of the Creditors.

58.    On information and belief, Roper is not even aware he is the attorney of record for any of the Creditors in the collection lawsuits until he is contacted by an attorney representing the consumer being sued or appears at a court hearing in front of a state court judge to prosecute the collection lawsuit for one of the Creditors named as the state court plaintiff in an attempt to obtain a judgment for the creditor.

59.    On information and belief, Roper did not enter into a representation agreement with Westside, either orally or in writing, for his representation of Westside in the collection lawsuit, and was not aware he was the attorney of record for the collection lawsuit until he appeared in General Sessions Court on July 26, 2017.

60.    On information and belief, Accounts Research drafted and prepared the collection lawsuit and sworn affidavit and listed Roper as the attorney for Westside on the civil summons.  **See exhibit 1, p. 1.**

61.    On information and belief, Roper did not have any direct personal involvement in the drafting and preparation of the collection lawsuit filed against the Garretts and did not review any of the facts of Westside's claims against the Garretts in order to make determination if, or when, a collection lawsuit should be filed against any of them and the amounts that should be

demanded from each of them in the civil summons or sworn affidavit, including the amounts for principal balance and collection costs, interest, attorney fees, or process server fees.

62. Listing Roper as Westside's attorney on the civil summons, falsely represents or implies to the least sophisticated consumer that Roper was professionally involved in the Garretts' file before the collection lawsuit was filed.

63. The communications in the form of the civil summons and sworn affidavit were false, deceptive, and misleading because they were not "from" an attorney in any meaningful sense of the word, and some degree of attorney involvement is required before communications will be considered "from" an attorney within the meaning of the FDCPA.

64. The listing of Roper as Westside's attorney is sufficient to give the least sophisticated consumer the false impression that the civil summons and sworn affidavit were communications from an attorney, in violation of 15 U.S.C. § 1692e(3).

65. Upon being served the collection lawsuit, the least sophisticated consumer, may reasonably believe that an attorney has reviewed his or her file and has determined that he or she is a candidate for legal action.

66. Listing Roper as Westside's attorney when he had not been meaningfully involved with Garretts' account violates 15 U.S.C. §1692e's prohibition against false, deceptive, or misleading communications because it falsely implies that an attorney, acting as an attorney, is involved in collection of the alleged debt.

### *DEBORAH GARRETT'S WRONGFUL GARNISHMENT CLAIMS*

67. Plaintiffs incorporate by reference all the above paragraphs as though fully stated herein.

*Requests for the Issuance of Garnishment That Contains Postjudgment
Interest That Exceeds the Amount Allowed Under State Law*

68. With the exception for judgments "based on a statute, note, contract or other writing", when the judgment was entered against the Garretts on July 26, 2017, the postjudgment interest rate in Tennessee was 6.25%. **See Tenn. Code Ann. §§ 47-14-121.**

69. Interest shall be computed on every judgment from the day on which the state court enters the judgment. **See Tenn. Code Ann. §§ 47-14-122.**

### *Restitution for Unjust Enrichment*

70. With the requests for the issuance of a garnishment to Deborah Garrett's employer that contains postjudgment interest or fees that exceed the amount allowed in violation of Tennessee state law resulted in a wrongful garnishment, Deborah Garrett pursues this cause of action for actual damages incurred as a result of Westside and Account Research's collection actions with the use of a request for the issuance of a garnishment on the judgment entered against her.

71. Additionally, Deborah Garret requests that she be awarded pre-judgment interest on the sums received by Westside and Accounts Research as a result of the wrongful garnishment from the time the amounts were garnished from her wages or she paid them to the clerk, in an amount determined by this Court.

### *Punitive Damages*

72. "It is well settled that one may maintain an action for [a]. . . wrongful garnishment. *Long v. Alford*, 14 Tenn. App. 1, 5." *Bryson v. Bramlett*, 204 Tenn. 347, 351, 321 S.W.2d 555, 557, 1958 Tenn. LEXIS 274, *4 (Tenn. 1958). *See also Aero. Prods. Int'l, Inc. v. FWF, Inc.*, 2009 U.S. Dist. LEXIS 28294, *18-19, 2009 WL 902306 (W.D. Tenn. Mar. 31, 2009) ("Punitive damages may be awarded to punish a defendant for willful wrongful conduct

and to deter others from engaging in similar conduct.) *Goodale v. Langenberg*, 243 S.W.3d 575, 585 (Tenn. Ct. App. 2007")).

73. Deborah Garrett would request that she be awarded punitive damages against Westside and Accounts Research for their willful and wrongful conduct, gross negligence and reckless disregard as a result of the wrongful garnishment that requests illegal interest, in an amount determined by a jury at trial.

## GARRETTS' RICO CLAIMS AGAINST THE WESTSIDE ENTERPRISE

74. The incorporate by reference all the above paragraphs as though fully stated herein.

75. The way the Westside enterprise operates is as follows: Westside is a healthcare provider who provides medical care to patients in its office and at hospitals. Westside's patients that are provided medical care in its office are normally required to sign a contract before the medical care is provided, but, if one is signed by the patient being provided medical care, Westside does not require the receiving person's spouse or other family members to sign the contract. Westside patients provided medical care in hospitals are not always required to sign a contract before the medical care is provided, but if one is signed, it is normally just signed by the patient receiving the medical care, and Westside does not require the receiving person's spouse or other family members to sign the contract. In most, if not all cases, Westside provides the medical care without requiring the patient to pay for the medical care in full when provided, thus, extending credit to the patient receiving medical care, and then bills the patient for any amounts not covered by insurance or that were not paid when the medical services were provided. If the patient does not or is not able to pay the amount billed by Westside, Westside assigns the debt to Accounts Research for collection. If Accounts Research is unable to collect the debt from Westside's

patients by voluntary payment, it then proceeds to prepare and file collection lawsuits against the patients who received the medical care from Westside, any spouse of the patient even though they did not receive medical care from Westside and did not sign a contract with Westside, and sometimes the parent(s) of the person who received medical care from Westside, even though the patient was 18 years or age or older when the medical services were received.  When filing the collection lawsuits against Westside's patients, spouses or other family members, Accounts Research hires Roper to assist it, and, in addition to the original amount of the debt owed by the patient to Westside, adds on: (a) collection fees that were never billed to the patient by Westside, (b) interest that exceeds the amount allowed under Tennessee state law, (c) attorney fees, whether or not the patient, the patient's spouse, or other family member, signed a contract with Westside, and whether or not Westside or Accounts Research incurred attorney fees as a result of Roper's legal work on the collection lawsuit, and (d) process server fees that normally exceed the amount allowed under state law for service of civil summons, and for amounts that were not incurred by Westside or Accounts Research for service of the civil summons.

76.    By including these amounts in the collection lawsuits filed against Westside's patients, the patient's non-receiving and non-contracting spouse or other non-receiving or non-contracting family member, Westside, Accounts Research and Roper, as members of the Westside Enterprise, are attempting to collect debts in an illegal and unlawful way.

77.    Accounts Research conspires with Westside and Roper to take the original debt and add on amounts that are not allowed under Tennessee state law.  This way Westside attempts to receive the full amount of the debt owed to them, and possibly additional amounts, including interest, illegally added on, and Accounts Research benefits because it receives

additional amounts that it is not entitled to receive, including illegal interest, collection fees, attorney fees, and process server fees, and Roper benefits because Accounts Research uses these amounts illegally obtained to pay Roper a flat monthly fee for being named as the attorney for Westside and its other clients in collection lawsuits filed against the patients of Westside and Account Research's other clients.

*Garretts' Collection Lawsuit and Garnishment*

78.     The Westside scheme played out perfectly in the Garretts case when Westside, Accounts Research, and Roper filed the collection lawsuit against all the Garrets although they were not all legally responsible for the debt and when Westside and Accounts Researched filed the request for the issuance of a garnishment to Deborah Garrett's employer.  Kenneth Garrett received treatment at a hospital from Westside when he was over 18 years old and neither he nor one of his parents, Deborah or Charles Garrett, signed a contract with Westside.  Kenneth Garrett paid no amount to Westside when the medical services were provided to him, resulting in Westside extending him credit for the entire amount owed. The majority of the debt owed to Westside by Kenneth Garrett was paid by Charles Garrett's insurance, rendering the estimated amount of $866.27 due on the extension of credit to Kenneth Garrett by Westside.  Despite the Garretts not signing a contract with Westside, the members of the Westside Enterprise – Westside, Accounts Research, and Roper – filed a collection lawsuit against all of the Garretts that attempted to collect: (a) collection fees never billed to any of the Garretts by Westside or agreed to by any of the Garretts in a written contract, (b) prejudgment interest that exceeds the amount allowed under Tennessee state law by more than twice the enforceable interest rate they are entitled to charge for medical services, (c) attorney fees, whether or not Kenneth, Deborah, or

Charles Garrett signed a contract with Westside, and whether or not Westside or Accounts Research incurred attorney fees as a result of Roper's legal work on the collection lawsuit filed against the Garretts, and (d) process server fees that exceed the amount allowed under state law for service of civil summons, and for amounts not incurred by Westside or Accounts Research for service. After Westside and Accounts Research requested issuance of the garnishment to Deborah Garrett's employer in the amount of $2,681.68 , on August 9, 2017 a garnishment was issued by the General Sessions Court Clerk (Clerk) to her employer and soon thereafter her employer began garnishing 25% of her disposable earnings for approximately 3 months for a total of $1,681.32, which amount was forwarded by her employer to the Clerk via the United States mail. After receipt of the garnished amounts by the Clerk, the Clerk deducted court costs in the amount of $308.00 and forwarded the balance to Accounts Research via the United States Mail, who, in turn, forwarded part of the funds received from the Clerk to Westside via the United States Mail. On November 9, 2017, in an attempt to stop the garnishment of her paycheck, Deborah Garrett requested the issuance of a stay of the garnishment by completing the paperwork and paying the Clerk the $25.00 required fee. A stay of the garnishment was issued by the Clerk on November 9, 2017, and on December 11, 2017, the General Sessions Court Judge approved the payment of $50.00 biweekly by Deborah Garrett to the Clerk, which she has made in person at the Clerk's office and the rest via the United States mail.

79.     In the end, members of the Westside Enterprise all won as the scheme operated exactly as planned, and the members profited from the illegal addition of collection fees, interest, attorney fees, and process server fees for a total amount of approximately $2,700.00, over 3 times the original amount alleged to be owed by Kenneth Garrett to Westside.

*Violation of 18 U.S.C. § 1692(a)*

80.     The Garretts incorporate by reference all the above paragraphs as though fully stated herein.

81.     The RICO states:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.  18 U.S.C. § 1692(a).

82.     As stated above, the Garrets, Westside, Accounts Research and Roper are natural persons or corporate entities, and as such are each a "person" as the term is defined by 18 U.S.C. § 1961(3).

83.     As stated above, Westside, Accounts Research and Roper are each a part of the Westside Enterprise, which, as defined by 18 U.S.C. § 1961(4), includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

84.     At all times relevant to the events alleged, Westside, Accounts Research, and Roper were associated with the Westside Enterprise or, in the alternative, an association in fact. The activities by the Westside Enterprise are activities that affected interstate commerce.

85.     As set forth above, members of the Westside Enterprise, receive income from their participation in an extensive pattern of racketeering activity. That income is reinvested to finance future racketeering activity, and the future operation of the Westside Enterprise and other enterprises in which Accounts Research and Roper are members.

86. As a direct and approximate result of Westside, Accounts Research and Roper's violations of RICO, the Garretts have been injured in their business and property.

### *Violation of 18 U.S.C. § 1692(c)*

87. The Garretts incorporate by reference all the above paragraphs as though fully stated herein.

88. The RICO states:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 15 U.S.C. § 1692(c).

89. As stated above, the Garrets, Westside, Accounts Research and Roper are natural persons or corporate entities, and as such are each a "person" as the term is defined by 18 U.S.C. § 1961(3).

90. As stated above, Westside, Accounts Research and Roper are each a part of the Westside Enterprise, which, as defined by 18 U.S.C. § 1961(4), includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

91. At all times relevant to the events alleged, Westside, Accounts Research, and Roper were associated with the Westside Enterprise or, in the alternative, an association in fact. The activities by the Westside Enterprise are activities that affected interstate commerce.

92. As set forth above, members of the Westside Enterprise, receive income from their participation in an extensive pattern of racketeering activity. That income is reinvested to finance future racketeering activity, and the future operation of the Westside Enterprise and other enterprises in which Accounts Research and Roper are members.

93.     As a direct and approximate result of Westside, Accounts Research and Roper's violations of RICO, the Garretts have been injured in their business and property.

### *Violations of 15 U.S.C. § 1692(d)*

94.     Plaintiffs incorporate by reference all the above paragraphs as though fully stated herein.

95.     The Westside Enterprise members conspiracy to secure money due the Garretts for their own use through this fraudulent scheme described above violates this section of RICO.

96.     The Westside Enterprise members have engaged in the illegal conduct mentioned above as part of a common scheme or conspiracy. This conspiracy could not have been achieved and been effective without the willing participation of all members of the Westside Enterprise.

97.     The Westside Enterprise members, with knowledge and intent, agreed to the overall objective of the conspiracy and agreed to commit at least two predicate acts and verbally agreed to participate in the conspiracy.

98.     The Westside Enterprise members, with knowledge and intent, agreed to and did aid and abet all of the above illegal activities, RICO predicate acts, and RICO violations.

99.     For the fraudulent schemes to be successful, each member of the Westside Enterprise had to agree to enact and utilize the same devices and fraudulent tactics against the Garretts.

100.    Numerous common facts and similar activities, which reflect the above reality and imply the existence of a conspiracy, exist among the members of the Westside Enterprise, including:

- Accounts Research is compensated by Westside based upon a contingency fee arrangement;

- The members of the Westside Enterprise conspire to add artificial and illegal profits to the amount of debt owed by the Garretts;

- The members of the Westside Enterprise conspire to use the U.S. postal system to collect these artificial profits and illegal charges;

- The members of the Westside Enterprise conspire to use state and federal banking systems involved in interstate commerce, and other common means of collecting these artificial profits and illegal charges;

- The members of the Westside Enterprise use a common post office box to collect these artificial profits and illegal charges;

- The members of the Westside Enterprise conspire to add a percentage upcharge to the debt when none of the Garretts had signed a contract with Westside, rendering the collection charges per se illegal and unreasonable;

- The members of the Westside Enterprise conspire to add interest to the debt in violation of state law and when none of the Garretts had signed a contract with Westside, rendering the interest added illegal;

- The members of the Westside Enterprise conspire to add attorney fees to the debt in violation of state law and when none of the Garretts had signed a contract with Westside, rendering the attorney fees added illegal; and

- The members of the Westside Enterprise conspire to add attorney fees and process servers fees to the debt in violation of state law when none of these fees had been incurred by Westside or Accounts Research.

101. The Garretts have been injured in their business and property by reason of the above-described conduct in that they have paid more than $1,500.00 based upon the fraudulent charges, in violation of 18 U.S.C. §§ 1692(a), (c), and (d).

## CLASS ALLEGATIONS

### FDCPA CLASS ALLEGATIONS

102. The Garretts and the FDCPA Class incorporate by reference all the above paragraphs as though fully stated herein.

103. The Garretts bring this action individually and on behalf of all persons similarly situated.

104. The proposed class consists of:

(a) All persons sued by the Creditors;

(b) In the state courts of Tennessee;

(c) That included amounts in the collection lawsuits for:

(1) collection fees that were not billed by one of the Creditors or that a member of this Class Action had not agreed to in a written contract with one of the Creditors;

(2) interest that was not billed by one of the Creditors, that a member of this Class Action had not agreed to in a written contract with one of the Creditors, or that exceeds the amount of interest that may be charged for medical or dental services under state law;

(3) attorney fees that a member of this Class Action had not agreed to in a written contract with one of the Creditors or had not been incurred by one of the Creditors or Accounts Research; and

        (4)      process server fees that had not been incurred by one of the Creditors or Accounts Research; and/or

(d)      That had garnishments issued against their wages that included amounts of postjudgment interest or fees that exceed the amount allowed under Tennessee state law;

(e)      That made payments to the Garnishment Defendants as a result of the wrongful garnishments issued to their employers or direct payment to the clerk; and

(f)      In the one year preceding the filing of this action.

105.    Excluded from the class are any persons employed by or associated with the Creditors, the FDCPA Defendants or this Court.

106.    The class, as defined above, is identifiable.  The Garretts are members of the class.

107.    The FDCPA Defendants have attempted to collect debts incurred with the Creditors in a sufficient number of actions against members of the FDCPA Class to make joinder in a single proceeding impractical.  The numerosity requirement of Rule 23(a)(1) is satisfied by the size of the FDCPA Class.

108.    The FDCPA Defendants have a policy or practice of:

(a)      demanding amounts in collection lawsuits for:

        (1)      collection fees that were not billed by one of the Creditors or that a member of this Class Action had not agreed to pay in a written contract with one of the Creditors:

        (2)      interest that was not billed by one of the Creditors, that a member of this Class Action had not agreed to pay in a written contract with one of the Creditors, or that exceeds the amount of interest that may be charged under state law;

(3)     attorney fees that a member of this Class Action had not agreed to pay in a written contract with one of the Creditors or that had not been incurred by one of the Creditors or Accounts Research; and

(4)     process server fees that had not been incurred by one of the Creditors or Accounts Research; and

(b)     requesting the issuance of garnishments to judgment debtors' employers that include interest or fees that exceed the amount allowed under Tennessee state law.

The legality of the FDCPA Defendants' policies or practice under the FDCPA presents a common question to be decided in this action that satisfies the commonality requirement under Rule 23(a)(2).

109.    Since the FDCPA Defendants' policies and practices stated above are followed or used in their attempts to collect consumer debts from the Garretts and the FDCPA Class are alleged to violate the FDCPA, their claims are typical as required by Rule 23(a)(3).  The Garretts' and the FDCPA Class claims are based on and arise out of similar facts constituting the wrongful conduct of the FDCPA Defendants.

110.    The Garretts have no interests antagonistic to the FDCPA Class and therefore each is adequate to serve as a representative of the Class as required by Rule 23(a)(4).

111.    The Garretts' counsel has sufficient experience and knowledge to represent the Garretts' and the FDCPA Class for the claims asserted in this action. The Garretts' counsel is adequate to represent the Garretts and the FDCPA Class as required by Rule 23(a)(4) and (g) based on their experience in consumer and class cases.

112.    The requirements of Rule 23(b)(3) are also satisfied. The legality of the FDCPA Defendants' actions and omissions under the FDCPA are predominate issues to be decided

in this action establishing the predominance required by Rule 23(b)(3). Determination of these issues in a single class proceeding is superior to individual actions under the criteria set forth in Rule 23 (b)(3)(A)-(D).

## WRONGFUL GARNISHMENT CLASS CLAIMS

## GARNISHMENT CLASS ALLEGATIONS

113. Deborah Garrett and the members of the Wrongful Garnishment Class incorporate by reference all the above paragraphs as though fully stated herein.

114. Deborah Garrett bring this action individually and on behalf of all persons similarly situated.

115. The proposed Garnishment Class consists of:

(a)     All persons sued by the Garnishment Defendants;

(b)     In the State of Tennessee;

(c)     That had garnishments issued against their wages that include amounts of postjudgment interest or fees that exceeds the amount allowed under Tennessee state law;

(d)     That made payments to the Garnishment Defendants as a result of the wrongful garnishments issued to their employers by garnishment of wages or direct payment to the clerk; and

(e)     In the three years preceding the filing of this action.

116. Excluded from the Garnishment Class are any persons employed by or associated with the Garnishment Defendants, or this Court.

117. The Garnishment Class, as defined above, is identifiable.  Deborah Garrett is a member of the Garnishment Class.

118. The Garnishment Defendants have requested the issuance of garnishments in a sufficient number of actions against members of the Garnishment Class to make joinder in a single proceeding impractical. The numerosity requirement of Rule 23(a)(1) is satisfied by the size of the Garnishment Class.

119. The Garnishment Defendants have a policy or practice of requesting the issuance of garnishments to judgment debtors' employers that include postjudgment interest or fees that exceeds the amount allowed under Tennessee state law. The Garnishment Defendants followed this policy or practice when it requested the issuance of garnishments to the employers of Deborah Garrett and the members of the Garnishment Class. The legality of the Garnishment Defendants' policy or practice under state law presents a common question to be decided in this action that satisfies the commonality requirement under Rule 23(a)(2).

120. Since the requests for the issuance of garnishments to employers that include postjudgment interest or fees that exceeds the amount allowed under Tennessee state law and the eventual issuance of garnishments against Deborah Garrett and the members of the Garnishment Class are alleged to violate state law, respectively, their claims are typical as required by Rule 23(a)(3). Deborah Garrett and the members of the Garnishment Class's claims are based on and arise out of similar facts constituting the wrongful conduct of the Garnishment Defendants.

121. Deborah Garrett has no interests antagonistic to the Garnishment Class and therefore is adequate to serve as a representative of the Garnishment Class as required by Rule 23(a)(4).

122. Deborah Garrett's counsel has sufficient experience and knowledge to represent Deborah Garrett and the members of the Garnishment Class for the claims asserted in this action.

Deborah Garrett's counsel is adequate to represent Deborah Garrett and the Class as required by Rule 23(a)(4) and (g) based on their experience in consumer and class cases.

123. The requirements of Rule 23(b)(3) are also satisfied. The legality of the Garnishment Defendants' actions under state law are predominate issues to be decided in this action establishing the predominance required by Rule 23(b)(3). Determination of these issues in a single class proceeding is superior to individual actions under the criteria set forth in Rule 23 (b)(3)(A)-(D).

## RICO CLASS CLAIMS

124. The Garretts and the members of the RICO Class incorporate by reference all the above paragraphs as though fully stated herein.

125. The Garretts, class members, and the RICO Defendants are natural persons or corporate entities, and as such are each a "person" as the term is defined by 18 U.S.C. § 1961(3).

126. There are several RICO enterprises involved in this class action.

127. Each "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity as defined by 18 U.S.C. ¶ 1961(4).

128. The common thread for each enterprise is Accounts Research and Roper.

129. The first enterprise damaged the Garretts, and is constituted by the following persons, collectively referred to as the "Westside Enterprise": Westside, Accounts Research, and Roper.

130. Each of the other enterprises consist of each unidentified entity and person that are current or former clients of Accounts Research, Accounts Research, and Roper.

131.   The other enterprises operate in the same manner as the Westside Enterprise, and consist of the currently unidentified Creditors, Accounts Research and Roper for the membership of each individual enterprise.  Most, if not all, of the unidentified Creditors provide medical care to patients in their offices and at hospitals, and their patients that are provided medical care in their offices are normally required to sign a contract before the medical care is provided, while their patients provided medical care in the hospitals are not always required to sign a contract before the medical care is provided.  But if a contract is signed, it is normally just signed by the patient receiving the medical care.  In most, if not all cases, the unidentified Creditors provide the medical care without requiring the patient to pay for the medical care in full when provided, and then bills the patient for any amounts not covered by insurance or that was not paid when the medical care was provided.  If the patient does not or is not able to pay the amount billed by the unidentified Creditors, they assign the debt to Accounts Research for collection.

132.   If Accounts Research is unable to collect the debt from the unidentified Creditors' patients by voluntary payment, it then proceeds to prepare and file collection lawsuits against the patients who received the medical care from the unidentified Creditors, any spouse of the patient even though they did not receive medical care from the unidentified Creditors and did not sign a contract with the unidentified Creditors, and sometimes the parent(s) of the person who received medical care from the unidentified Creditors, even though the patient is 18 years or age or older.

133.   When filing the collection lawsuits against The unidentified Creditors' patients, spouses or other family members, Accounts Research hires Roper to assist it, and, in addition to the original amount of the debt owed by the patient to The unidentified Creditors, adds on: (a)

collection fees that were never billed to the patient, (b) interest that exceeds the amount allowed under Tennessee state law, (c) attorney fees, whether or not the patient, the patient's spouse, or other family member, signed a contract with The unidentified Creditors, and whether or not The unidentified Creditors or Accounts Research incurred attorney fees as a result of Roper's legal work on the collection lawsuit, and (d) process server fees that normally exceed the amount allowed under state law for service of civil summons, and for amounts that were not incurred by the unidentified Creditors or Accounts Research for service of the civil summons.

134. By including these amounts in the collection lawsuits filed against the unidentified Creditors' patients, the patient's spouse or other family member, the unidentified Creditors, Accounts Research and Roper collect the debts in an illegal and unlawful way.

135. Accounts Research conspires with each of the unidentified Creditors and Roper to take the original debt and add on amounts that are not allowed under Tennessee state law. This way the unidentified Creditors receives the full amount of the debt owed to them, and possibly additional amounts illegally added on, and Accounts Research benefits because it receives additional amounts that it is not entitled to receive, and Roper benefits because Accounts Research uses these amounts illegally obtained to pay him for representing its other clients.

136. The proposed RICO Class consists of:

(f)      All persons sued by the RICO Defendants;

(g)      In the State of Tennessee;

(h)     That had amounts added to their collection lawsuits for collection charges not owed by the persons because the persons did not sign a contract or that exceeds the amount allowed under the contract;

(i)     That had amounts added to their collection lawsuits for prejudgment interest not owed under state law because the persons did not sign a contract or that exceeds the amount allowed under Tennessee state law;

(j)     That had amounts added to their collection lawsuits for attorney fees not owed under state law because the persons did not sign a contract or that were not incurred by Accounts Research or a Creditor;

(k)     That had amounts added to their collection lawsuits for process server fees not incurred by Accounts Research or a Creditor; and/or

(l)     That had garnishments issued against their wages that included amounts of postjudgment interest or fees that exceed the amount allowed under Tennessee state law; and

(m)     In the four years preceding the filing of this action.

137.    Excluded from the RICO Class are any persons employed by or associated with the RICO Defendants, or this Court.

138.    The RICO Class, as defined above, is identifiable.  The Garretts are members of the RICO Class.

139.    The RICO Defendants have attempted to collect debts incurred with the Creditors in a sufficient number of actions against members of the RICO Class to make joinder in a single proceeding impractical.  The numerosity requirement of Rule 23(a)(1) is satisfied by the size of the RICO Class.

140. The RICO Defendants have a policy or practice of:

    (c)     demanding amounts in collection lawsuits for:

        (1)    collection fees that were not billed by one of the Creditors or that a member of this Class Action had not agreed to pay in a written contract with one of the Creditors:

        (2)    interest that was not billed by one of the Creditors, that a member of this Class Action had not agreed to pay in a written contract with one of the Creditors, or that exceeds the amount of interest that may be charged under state law;

        (3)    attorney fees that a member of this Class Action had not agreed to pay in a written contract with one of the Creditors or that had not been incurred by one of the Creditors or Accounts Research; and

        (4)    process server fees that had not been incurred by one of the Creditors or Accounts Research; and

    (d)    requesting the issuance of garnishments to judgment debtors' employers that include interest or fees that exceed the amount allowed under Tennessee state law.

The legality of the RICO Defendants' policies or practice under the RICO presents a common question to be decided in this action that satisfies the commonality requirement under Rule 23(a)(2).

141. Since the RICO Defendants' policies and practices stated above are followed or used in their attempts to collect consumer debts from the Garretts and the RICO Class are alleged to violate the RICO, their claims are typical as required by Rule 23(a)(3). The Garretts' and the RICO Class claims are based on and arise out of similar facts constituting the wrongful conduct of the RICO Defendants.

142.    The Garretts have no interests antagonistic to the RICO Class and therefore each is adequate to serve as a representative of the Class as required by Rule 23(a)(4).

143.    The Garretts' counsel has sufficient experience and knowledge to represent the Garretts' and the RICO Class for the claims asserted in this action. The Garretts' counsel is adequate to represent the Garretts and the RICO Class as required by Rule 23(a)(4) and (g) based on their experience in consumer and class cases.

144.    The requirements of Rule 23(b)(3) are also satisfied. The legality of the RICO Defendants' actions and omissions under the RICO are predominate issues to be decided in this action establishing the predominance required by Rule 23(b)(3). Determination of these issues in a single class proceeding is superior to individual actions under the criteria set forth in Rule 23 (b)(3)(A)-(D).

### *Summary*

145.    First, the FDCPA Defendants conduct in connection with collection of the debts and in an attempt to collect the debts was conduct in violation of numerous and multiple FDCPA provisions including, but not limited to the above-cited provisions.  Second, the requests by the Garnishment Defendants for the issuance of garnishments to Plaintiffs' employers that include postjudgment interest or fees that exceeds the amount allowed under Tennessee state law resulted in the issuance of wrongful garnishments in violation of state law. Finally, the RICO Defendants conduct in connection with collection of the debts and in an attempt to collect the debts was conduct in violation of numerous and multiple RICO provisions including, but not limited to the above-cited provisions.  As a result of the federal and state law violations, the Garretts and the members of the FDCPA, Wrongful

Garnishment, and RICO Classes (Plaintiffs) should be awarded damages as requested in this Complaint.

## TRIAL BY JURY

146.    Plaintiffs are entitled to and hereby respectfully demand a trial by jury.  *U.S. Const. amend.*
*7;  Fed.R.Civ.P. 38.*

## CAUSES OF ACTION

### COUNTS I - IX

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(3),

### 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1)

147.    The Plaintiffs incorporate by reference all of the above paragraphs as though fully stated herein.

148.    The foregoing acts and omissions of the FDCPA Defendants constitutes multiple violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692 et seq., with respect to the FDCPA Plaintiffs.

149.    As a result of the FDCPA Defendants' violations of the FDCPA, the FDCPA Plaintiffs are entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B) in the amount of $500,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the FDCPA Defendants.

### COUNT X.

### RESTITUTION AND PREJUDGMENT INTEREST

150.    Plaintiffs incorporate by reference all the above paragraphs as though fully stated herein.

151. With the request by the Garnishment Defendants for the issuance of garnishments to the Garnishment Plaintiffs' employers that include postjudgment interest that exceeds the amount allowed under Tennessee state law resulting in the issuance of wrongful garnishments in violation of Tennessee law, the Garnishment Plaintiffs are entitled to damages in the amount of: (a) restitution of all payments made or wages garnished as a result of the wrongful garnishments, and (b) pre-judgment interest on the restitution in an amount to be determined by this Court on the sums received by the Garnishment Defendants as a result of the wrongful garnishments.

## COUNT XI.

## PUNITIVE DAMAGES

152. Plaintiffs incorporate by reference all the above paragraphs as though fully stated herein.

153. Due the issuance of the wrongful garnishments to the Garnishment Plaintiffs' employers that include postjudgment interest that exceeds the amount allowed under Tennessee state law, the Garnishments Plaintiffs are entitled to punitive damages in the amount to be determined by a jury at trial by reason of the Garnishment Defendants' willful and wrongful conduct, gross negligence and reckless disregard gross negligence and reckless disregard of the Garnishment Plaintiffs' right to not be subjected to garnishments that include illegal amounts of interest, and to deter the Garnishment Defendants and others from taking the same or similar actions in the future.

## COUNTS III - X

## VIOLATIONS OF THE RACKETEER INFLUENCED
## AND CORRUPT ORGANIZATIONS ACT

## 18 U.S.C. §§ 1692(a), 1692(c), and 1692(d)

154. Plaintiffs incorporate by reference all of the above paragraphs as though fully stated herein.

155. The foregoing acts and omissions of the RICO Defendants constitutes multiple violations of RICO including, but not limited to each and every one of the above-cited provisions of RICO, 18 U.S.C. §§ 1691 et seq., with respect to the RICO Plaintiffs.

156. As a result of the RICO Defendants' violations of RICO, the RICO Plaintiffs are entitled to compensatory damages, together with treble damages, in an amount to be determined at trial by a jury and, reasonable attorney's fees and costs pursuant to 18 U.S.C. § 1964(d).

## PRAYER FOR RELIEF

**WHEREFORE**, FDCPA Plaintiffs pray that judgment be entered against the FDCPA Defendants:

## COUNTS I - IX

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(3),

## 1692e(5), 1692e(8), 1692e(10), 1692f, and 1692f(1)

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the FDCPA Defendants and for the FDCPA Plaintiffs, in an amount to be determined at trial by a jury;

- for an award of statutory damages of $500,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against the FDCPA Defendants, and for the FDCPA Plaintiffs;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the FDPCA Defendants, and for the FDPCA Plaintiffs;

**WHEREFORE**, the Garnishment Plaintiffs pray that judgment be entered against the Garnishment Defendants:

## COUNTS X - XI

- for restitution in the amount of any payments made or wages garnished as a result of the wrongful garnishments, and, in an amount to be determined by this Court for pre-judgment interest on all sums received by the Garnishment Defendants as a result of their request for the issuance of garnishments that contain amounts that include illegal amounts of interest;

- an award of punitive damages in the amount to be determined by a jury at trial due to the Garnishment Defendants' willful and wrongful conduct, gross negligence and reckless disregard of the Garnishment Plaintiffs' right to not be subjected to garnishments that include illegal amounts of interest, and to deter the Garnishment Defendants and others from taking the same or similar actions in the future, against the Garnishment Defendants and for the Garnishment Plaintiffs;

- for the costs of this action;

**WHEREFORE**, RICO Plaintiffs pray that judgment be entered against the RICO Defendants:

## VIOLATIONS OF THE RACKETEER INFLUENCED
## AND CORRUPT ORGANIZATIONS ACT

### 18 U.S.C. §§ 1692(a), 1692(c), and 1692(d)

- for an award of compensatory damages, together with treble damages, in an amount to be determined at trial by a jury and, reasonable attorney's fees and costs pursuant to 18 U.S.C. § 1964(d); and

- for such other and further relief as may be just and proper.

07/02/18                          Respectfully submitted,

                                  **DEBORAH GARRETT**
                                  **CHARLES GARRETT**
                                  **KENNETH GARRETT**


                                  s/        Alan C. Lee
                                  Alan C. Lee, BPR #012700
                                  PO Box 1357
                                  Talbott, TN 37877-1357
                                  (423) 581-0924
                                  aleeattorney@gmail.com

                                  Attorney for Plaintiffs